David Scot LYND, Appellant,

v.

The STATE of Texas, Appellee.

No. 6–88–073–CR.

Court of Appeals of Texas, Texarkana.

Jan. 3, 1990.

Hon. James P. Finstrom, Jefferson, for appellant.

Tony Hileman, Jefferson, for appellee.

BLEIL, Justice.

David Lynd appeals from his conviction for the offense of attempted theft of over $20,000.00. Lynd questions the sufficiency of the evidence to support his conviction and raises other issues. We find the evidence sufficient, resolve the other issues in favor of the State and affirm.

Lynd entered a fishing tournament at Lake of the Pines. The contest was the KYKX Big Bass Classic and the largest fish caught was to win a prize of $105,-000.00. During the tournament, Lynd produced a fish which weighed enough to win that prize. It was weighed and placed in a holding tank, and later that day was cut open for inspection. Four lead weights were found in the fish—three in its stomach and one in its throat—which had increased its weight by .66 pound, to the winning weight of 7.64 pounds.

The indictment charges Lynd with altering the weight of the fish and thereafter submitting the fish in its altered state as a candidate for the cash prize. Lynd argues that the facts are insufficient to prove that he either placed the weights in the fish or knew that they were there. Lynd testified that he noticed nothing unusual about the fish when he caught it and denied doing anything to the fish. The weights were in the fish at the time Lynd turned his fish in to the officials.

Mike Walker, a game warden for the Texas Department of Parks and Wildlife, first met Lynd after he was arrested and taken to the sheriff's office. Lynd was cooperative with the authorities and consented to a search of his truck, boat, and trailer.

The search of the vehicle revealed the following K–Mart sales slip:

```
 THANK YOU FOR
 SHOPPING OUR K MART
 RETAIN FOR REFUND
 STORE #7248 04/30/88

 SPT .74
 SPT .74
 SPT 1.28
 SPT .99
 SPT .99
 TAX .38N

 TOTAL 5.12

 CASH 10.12

 CHANGE 5.00

 8958 1352 6.12PM
```

In the locked glove compartment of the boat, Walker found several items in a plastic sack marked "K–Mart." Some fishing weights were in two sealed plastic bags, each containing four pieces of one-ounce sinkers. Each bag had a K–Mart price tag of $.74. Also in the K–Mart sack were three trolling weights. Weights like the four in the fish were not found.

Information on the sales slip revealed that all of the items bought were from the clerk at the cash register in the sporting goods department of a K–Mart store at 5701 Broadway in Garland. Dennis Anderson, the manager of the sporting goods department of that store, identified the sales slip from the numbers 1352 and 8958 as coming from the register in his department. Anderson identified the items in the K–Mart plastic bag found in the boat. There were two plastic bags of egg sinkers with a K–Mart price of $.74 each. There also were three trolling weights which would have cost $1.28. That covered all of the items in the K–Mart plastic bag.

Anderson then was shown the four weights which were removed from the fish. Each weight was a three-ounce bass-casting sinker with a brass swivel on top. The brass swivels bore the label "JT." Anderson said that "JT" stood for J. Rouse Tackle of New Jersey, and that K–Mart sold that type. He said that he sold weights of that size and type and that the

K–Mart price for two such weights, sold in one plastic bag, was $.99.

Lynd testified on his own behalf. He lived in Garland and had been a salesman for a beer distributorship, but had quit his job a couple of months before the Big Bass Classic. He had fished all his life, but did not hear about this tournament until shortly before it was to take place. He had never seen the Lake of the Pines until the day he fished in this tournament, but was attracted to the large prize money being offered. He drove to the two-day tournament on Saturday to look around, find where the tournament site was, and talk to people who fished that day. He returned to Garland after a few hours. He stopped at a K–Mart about one-half mile from his home. He said that he purchased the items found in the K–Mart sack and some tiny spinner bait, called Beetle Spins, which he believed cost $.99 each. Lynd said that the four weights taken from his fish were not his and that he had not bought them from K–Mart.

On Sunday morning he left Garland at 5:30 or 6:00 a.m., drove to the tournament site, launched his boat and began fishing. He had one bite and that was by the one fish he caught. He continued fishing awhile, then went to check in his fish at 11:11 a.m. He denied putting the weights in the fish and stated that someone else must have done that.

Lynd contends that the evidence is insufficient to sustain the conviction. In a review for sufficiency of the evidence, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Butler v. State,* 769 S.W.2d 234 (Tex.Crim.App.1989).

When analyzing a circumstantial evidence case, we examine the evidence to see if there is a reasonable hypothesis other than the guilt of the accused. If so, it cannot be said that guilt has been shown beyond a reasonable doubt. *Denby v.*

*State,* 654 S.W.2d 457, 464 (Tex.Crim. App. [Panel Op.] 1983); *Hankins v. State,* 646 S.W.2d 191 (Tex.Crim.App.1981). Lynd's attorney contends that the existence of a reasonable hypothesis other than his guilt prevents our affirmance of this conviction. He asserts that it is perfectly reasonable and consistent with his defense that when Lynd caught the fish the four lead weights were already in it. In this connection, there is no evidence about whether it is common for fish to have weights in their stomach, or whether the weights might have gotten into the stomach in a "natural fashion," such as ingestion by the fish. That the weights were in the fish when Lynd caught it, or that they got there naturally, are hypotheses inconsistent with his guilt. However, we do not find these to be reasonable hypotheses. Even Lynd, when denying that he put the weights in the fish, testified that someone had to have put them in the fish.

■ The jury judges the facts and the credibility of the witnesses; it is free to choose to believe or not believe the witnesses, in whole or in part. *Sharp v. State,* 707 S.W.2d 611 (Tex.Crim.App.1986). We are not the jury and therefore not free to choose what to believe and disbelieve, neither are we free to determine what weight to give the evidence. Upon our review of the evidence the critical question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the elements of the crime beyond a reasonable doubt. *Denby v. State,* 654 S.W.2d at 463. Viewing the evidence in the light most favorable to the prosecution and assuming that the jury did not believe Lynd, but did believe the evidence against him, this Court is required to find the evidence sufficient to support a finding of guilt. A rational trier of fact could have found all the elements of the offense beyond a reasonable doubt.

■■ We now turn to the other issues raised by Lynd. He argues that the indictment is fundamentally defective because it fails to allege an offense. For an indictment to be sufficient, it must meet certain requirements. First, it must accuse the defendant of an act constituting an offense. Tex.Code Crim.Proc. Ann. art. 21.01 (Vernon 1989). Second, it must state all of the elements of the offense charged. Tex. Code Crim.Proc. Ann. art. 21.03 (Vernon 1989). Third, it must by plain and intelligible words particularize the act charged sufficiently to protect a defendant's right against double jeopardy, and give him notice of precisely what he has been charged so that he may prepare a defense. *Terry v. State,* 471 S.W.2d 848, 852 (Tex.Crim. App.1971); *Sanders v. State,* 642 S.W.2d 860, 862 (Tex.App.—Fort Worth 1982, pet. ref'd); Tex.Code Crim.Proc. Ann. art. 21.02 (Vernon 1989).

> The indictment alleges that Lynd did: unlawfully, intentionally and knowingly, with specific intent to commit the offense of theft over $20,000., attempt to commit the offense of theft over $20,000. without the effective consent of Richard Purdy, the owner thereof, by intentionally committing acts amounting to more than mere preparation that tended, but failed, to effect the commission of the offense intended, to-wit; by then and there altering the weight of a fish by use of weights and thereafter submit said fish as a candidate for a cash prize, in a contest.

The act constituting an offense with which Lynd was charged is attempted theft of over $20,000.00. The indictment alleges an appropriate mens rea, that his action was unlawful and that he intended to deprive the owner of property without the owner's effective consent. In addition, the specific circumstances of the alleged offense were detailed by the indictment in a manner which would clearly both give the defendant notice of precisely what he had been charged and protect him against double jeopardy. The offense of theft as defined by Tex.Penal Code Ann. § 31.03 (Vernon 1989 & Supp.1990) constitutes a single offense superseding the separate offense previously known as theft by false pretext. The indictment sufficiently alleges an attempt to commit theft.

Lynd also contends that there is a fatal variance between the allegations in the in-

dictment and the offense actually proven at trial. Lynd argues that the State failed to prove that he altered the weight of the fish as alleged in the indictment. The weight of the fish was altered and Lynd submitted the fish for the $105,000.00 prize. Circumstantial evidence supports a finding that Lynd put the weights in the fish. There is no variance between the facts alleged and the facts proved.

■ Lynd further maintains that the facts presented by this cause do not constitute a penal offense, and that therefore he has been denied due process of law. He argues that the penal statute should be read together with the contest rules. The rules did not specifically state that the weight of a fish may not be altered. Therefore, Lynd contends that the fish as submitted was within the rules. Although the contest rules do not specifically state that lead weights may not be added to a fish's body to increase its weight, the contest is based upon the weight of the fish, not the weight of the fish plus whatever extraneous materials can be forced into their bodies. Lynd argues that there is considerable doubt that the penal statutes governing theft should apply to fishermen submitting fish in a contest. Tex.Code Crim.Proc. Ann. art. 1.26 (Vernon 1977) provides that "[t]he provisions of this Code shall be liberally construed, so as to attain the objects intended by the Legislature: The prevention, suppression and punishment of crime." *See also* Tex.Penal Code Ann. § 1.02 (Vernon 1974). Lynd suggests that this should be tempered by considerations of due process of law. However, he has not suggested any compelling reason that this conduct should be treated any differently from any other form of theft. Lynd was afforded due process.

The judgment of the trial court is affirmed.